1

2

3

4          **IN THE UNITED STATES DISTRICT COURT**

5          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

6

CHRISTOPHER LOPEZ,                          CASE NO.  06-cv-0257 TAG

7
                    Plaintiff,              MEMORANDUM OPINION AND ORDER
8                                           ON PLAINTIFF'S APPEAL FROM
                                            ADMINISTRATIVE DECISION
9          vs.
                                            ORDER DIRECTING THE CLERK TO
10                                          ENTER JUDGMENT FOR THE DEFENDANT
MICHAEL J. ASTRUE,[1]                       AND AGAINST THE PLAINTIFF
11   Commissioner of Social Security,

12                   Defendant.
                                       /
13
            Plaintiff Christopher Lopez ("Claimant"), through his attorney, seeks judicial review of an
14
administrative decision denying his claim for Supplemental Security Income ("SSI") under Title XVI
15
of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq.  Pending before the Court is Claimant's
16
appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").
17
Claimant filed his complaint on March 7, 2006  and his opening brief on November 1, 2006.  (Docs. 1,
18
19).  The Commissioner filed his opposition to the appeal on December 8, 2006.  (Doc. 21).  On
19
December 19, 2006, Claimant filed his reply brief.  (Doc. 22).
20
            Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to
21
proceed before a United States Magistrate Judge, and, by an order dated December 22, 2006, this action
22
was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 23).
23
                                        **JURISDICTION**
24
            On May 14, 2003, Claimant protectively filed his SSI application, alleging an onset date of June
25

26

27   _____

28      [1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

1

17, 1996.[2] (Administrative Record ("AR" 265).  The Social Security Administration recommended an onset dated of May 22, 2003, which was the date that Claimant filed his SSI application.  (AR 261- 264, 305).  His application was denied initially and on reconsideration by both the state and Social Security Agency ("SSA").  (AR 216-222, 231-234; 223-226, 236-240).

After timely requesting a hearing, Claimant and his counsel appeared before Administrative Law Judge ("ALJ") James E. Ross on June 7, 2005.  (AR 35-58, 245).  On July 1, 2005, the ALJ issued a written decision finding that Claimant was not disabled for purposes of SSI.  (AR 14-24).  The Appeals Council denied Claimant's request for review on January 18, 2006.  (AR 9-11).  The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision.  Id.  On March 7, 2006, Claimant timely filed this action.  (Doc. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, and the briefs filed by Claimant and the Commissioner, and, therefore, only will be summarized here.  In his 1999 application, Claimant alleged that he suffered a lower back injury that prevented him from working because it caused him lower back pain and he only could stand, sit, and walk for short periods of time.  (AR 110).  In his request for reconsideration, Claimant added that he had emotional problems and was unable to socialize.  (AR 123).  In 2001, Claimant stated that he suffered from depression, "lower lumber herniation disc protracting," and lower back pain, and reported that he could stand or sit for only thirty minutes.  (AR 274).  Among the paperwork he completed for his May 2003 application, Claimant prepared a "Reconsideration Disability Report," stating that, in addition to his previous ailments, he had

---

[2]  The administrative record indicates that Claimant had filed SSI applications in September 1999 and May 2001, which were denied initially and on reconsideration,  It appears that Claimant requested a hearing before Administrative Law Judge Richard C. Goodwin  when his May 2001 application was denied, but did not seek court review of ALJ Goodwin's adverse decision.  (See AR 101-104, 196-206, 207, 216, 223, 227-234, 246-260).  However, the Disability Report - Field Office, faxed on May 29, 2003, states that Claimant had one prior filing, which ended in an adverse hearing on December 7, 2000.  (AR 305).  There was, in fact, an administrative hearing on December 7, 2000, (AR 59-73), and ALJ Goodwin issued an adverse decision on January 17, 2001.  (AR 196-206).  Because Claimant's medical records are considered by this Court in assessing whether the ALJ's recent decision is correct, the previous applications, in themselves, are not important.

1   recently been diagnosed as having Hepatitis C.  (AR 308).

2         At the June 7, 2005, administrative hearing, Claimant testified that he was born on December

3   19, 1960, making him 44 years old on the date of the ALJ's 2005 decision.  (AR 14, 39).  Claimant

4   added that he had finished the eleventh grade of school, and had never obtain a high school diploma.

5   (AR 39).  Regarding his work history, Claimant testified that between 1990 and 1996, he had loaded

6   trailers with furniture, been a handyman, and installed tires.  (AR 39-41).  After suffering a work-related

7   injury in 1996, he initiated a workers' compensation case, and he received approximately $16,000 when

8   the case settled in 1999.  (AR 53).  As part of the settlement, Claimant enrolled in a vocational program

9   to become a computer technician, but he could not complete it because he was unable to sit through the

10   classes.  (AR 39, 54).

11         Regarding his ailments and how his symptoms interfered with his ability to work, Claimant

12   testified that his lower back pain has worsened since his previous administrative hearing, adding that

13   approximately two-and-one-half years before the instant hearing the back pain started to radiate down

14   both of his legs, which has prevented him from sitting for as long a period of time as before.  (AR

15   41-42).  Claimant further stated that the backs of his legs feel like they "are just getting pounded" and

16   the pain "goes down in my feet and they tingle." (AR 42).  Claimant reported the only treatment he

17   presently has for his pain consists of prescription medication, which helps alleviate the pain but makes

18   him feel groggy and "dingy , like I'm not even here."  (AR 41, 43, 48).  The medication also interferes

19   with his ability to pay attention.  (AR 49).  Claimant added that his insurance company refused to pay

20   for an MRI of his spine and a consultation with a specialist in 2004.  (AR 43-44, 55-56).  As to  his

21   Hepatitis C, Claimant testified that his doctors are not concerned about it because he has a "low or rare

22   form of it."  (AR 52).  In response to his attorney's question, Claimant stated that his weight averaged

23   around  290 pounds, but there was no reference to his height from which it can be determined whether

24   Claimant was obese and, if so, the extent to which his obesity affected his functionality.  (AR 57).

25         With respect to Claimant's activities and limitations, he testified that he could sit for  twenty or

26   thirty minutes; stand for ten-to-fifteen minutes before he had to walk or sit down; walk for one block;

27   and lift, carry, or hold approximately eight pounds with difficulty.  (AR 44-45).  Claimant acknowledged

28   that he has some "good" days, but stated that, since his back pain had worsened, he has had at least three

1  bad days per week.  (AR 45).  Claimant further testified that he tried to keep busy in the morning by

2  engaging in activities such as dumping the trash, vacuuming if his children were awake, and generally

3  moving around the house.  (AR 49).  He also would mow part of the lawn with his electric lawn mower

4  later in the day.  (AR 50).  Claimant reported that, every four-to-six hours, he took his pain medication,

5  after which he had to take a thirty minute nap.  (AR 50-51).  He added that he has no hobbies and does

6  not feel like doing anything, even with his three children.  (AR 51).

7  ### RELEVANT LEGAL FRAMEWORK

8  To qualify as disabled under Title XVI of the Act, an applicant for SSI benefits must be "unable

9  to engage in any substantial gainful activity by reason of any medically determinable physical or mental

10  impairment which can be expected to result in death or which has lasted or can be expected to last for

11  a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The Act also provides

12  that a claimant shall be determined to be under a disability only if his impairments are of such severity

13  that he "is not only unable to do his previous work but cannot, considering his age, education, and work

14  experience, engage in any other substantial gainful work which exists in the national economy."

15  42 U.S.C. § 1382c(a)(3)(B).

16  ### STANDARD OF REVIEW

17  Congress has provided a limited scope of judicial review of a Commissioner's decision.  See

18  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

19  the determination is not based on legal error and is supported by substantial evidence.  See Ukolov v.

20  Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(citations omitted); Jones v. Heckler, 760 F.2d 993, 995

21  (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987).

22  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of

23  fact are supported by substantial evidence."  Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983)

24  (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger,

25  514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888

26  F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573,

27  576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as

28  adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(citations omitted).

4

"[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989)(quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled under Title XVI of the Act. 20 C.F.R. § 416.920. Step one determines whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i), (b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments that meet the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to result in death, or have continuously lasted or are expected to last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied. Id.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), (d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 416.909,

416.920(a)(4)(iii), (d).   If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience.  20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish that he "is entitled to the  benefits claimed under the Act."  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)(citations omitted).  In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty to assist a claimant to develop the record . . . complicates the allocation of burdens* such that "the ALJ shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

As a preliminary matter, because in his January 17, 2001 decision, ALJ Richard C. Goodwin found that Claimant was not disabled, (AR 196-204), there is a continuing presumption of nondisability that Claimant must overcome by proving changed circumstances indicating a greater disability.  Chavez v. Bowen, 844 F.2d 691, 693-694 (9th Cir. 1988).  As ALJ Ross noted in the instant decision, Claimant's diagnosis of Hepatitis C constituted a changed circumstance sufficient to overcome the presumption of nondisability.[3]  (AR 17).

---

[3]  Mark L. Nystrom, M.D., an examining consultant, prepared a final evaluation in May 1998 that he submitted to the State Compensation Insurance Fund and Claimant's attorney.  In his evaluation, Dr. Nystrom diagnosed Claimant with, inter alia, Hepatis A and C.  (AR 324-326).  Thus, it is questionable whether Hepatitis C was, in fact, newly

1    ALJ Ross found, at step one, that Claimant had not engaged in substantial gainful activity since

2    his May 22, 2003 onset date.  (AR 18, 23).  At step two, the ALJ determined that Claimant had the

3    following severe impairments:  "obesity, and back pain, probably due to degenerative disc disease of the

4    lumbar spine."  (AR 18, 23).  ALJ Ross also found that Claimant had asymptomatic Hepatitis C,

5    hypertension, and non-severe mild depression.  (Id.).  At step three, the ALJ found that Claimant's severe

6    impairments, singly or in combination, did not meet or medically equal those listed in Appendix 1,

7    Subpart P, Regulation No. 4.  (AR 18, 23).  The ALJ then discussed in detail Claimant's medical records

8    and his testimony, which he found not entirely credible.  (AR 18-21, 23).  At step four, the ALJ

9    determined that Claimant could not perform his past relevant work.  (AR 21, 23).

10   Based on a finding that Claimant retained the residual functional capacity ("RFC") to do light

11   work, and using the Medical-Vocational Guidelines (the "Grids") as a framework, ALJ Ross concluded

12   that Claimant was not disabled.  (AR 22-24).  ALJ Ross noted that, pursuant to Medical-Vocational Rule

13   202.17 and Social Security Ruling ("SSR") 83-10, his finding that Claimant satisfied all of the criteria

14   of a Medical-Vocational Rule and that Claimant could do virtually the entire range of light work

15   permitted him to administratively notice that there were a significant number of jobs in the national

16   economy that the Claimant could perform and, therefore, he was not disabled.  (Id.).

17   **ISSUES**

18   Claimant contends that the Commissioner erred because ALJ Ross ignored substantial evidence

19   and misapplied the law.  Specifically, Claimant argues that:

20   (A)   The ALJ erred in failing to adopt the opinion of Claimant's treating physician;

21   (B)   The ALJ erred in rejecting part of the report prepared by examining consultant Dr. Juliana

22   Tran without providing adequate reasons;

23   (C )   The ALJ improperly found Claimant's pain testimony not credible, especially in light of

24   his persistent efforts to obtain relief; and

25   (D)   The ALJ should have elicited testimony from a vocational expert.

26   As discussed above, this Court must uphold the Commissioner's determination that a claimant

27

28   diagnosed such that the ALJ should not have presumed Claimant nondisabled.  Chavez, 844 F.2d at 693-694.

7

1  is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence

2  in the record as a whole to support the decision.

3  **DISCUSSION**

4  **(A)   Failure to Adopt Opinion of Treating Physician**

5       In his briefs, Claimant argues that the ALJ erroneously failed to adopt the opinion of Claimant's

6  treating physician, Christopher Gillespie, M.D., who had seen Claimant multiple times commencing in

7  December 2001, and whose assessment of Claimant's limitations was supported by objective medical

8  evidence.[4]  (Doc. 19, pp. 7-8).  Claimant further contends that, even if it was not accorded controlling

9  weight, the ALJ should have deferred to Dr. Gillespie's opinion.  (Doc. 19, p. 10; Doc. 22).

10      The opinions of treating doctors should be given more weight than the opinions of doctors who

11  do not treat the claimant.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester v. Chater, 81 F.3d

12  821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it

13  may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.

14  Id. at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject

15  this opinion without providing "specific and legitimate reasons" supported by substantial evidence in

16  the record.  Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by the

17  ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

18  his interpretation thereof, and making findings.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).

19  The ALJ must do more than offer his conclusions.  The ALJ must set forth his own interpretations and

20  explain why they, rather than the doctor's, are correct.  Embrey v. Bowen, 849 F.2d 418, 421-422 (9th

21  Cir.1988).

22      In Orn v. Astrue, ___F.3d ___, 2007 WL 2034287 (9th Cir. July 16, 2007), the Ninth Circuit

23  reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an

24  examining physician over that of a treating physician.  "When an examining physician relies on the same

25  clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the

26  examining physician are not substantial evidence."  Orn, 2007 WL 2034287, *5 (citation and quotation

27  ───────────────

28      [4]  Claimant delineates the medical reports that he avers demonstrates the veracity of Dr. Gillespie's assessment.
     (Doc. 19, pp. 8-10).

1   omitted). "By contrast, when an examining physician provides independent clinical findings that differ

2   from the findings of the treating physician, such findings are substantial evidence." Id. (citation and

3   quotation omitted). "Independent clinical findings can be either (1) diagnoses that differ from those

4   offered by another physician and that are supported by substantial evidence . . . or (2) findings based on

5   objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

6       If there is "substantial evidence" in the record contradicting the opinion of the treating physician,

7   the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R.

8   § 416.927(d)(2).  In that event, the ALJ is instructed by § 416.927(d)(2) to consider the factors listed in

9   § 416.927(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.  Those

10  factors include the "[l]ength of the treatment relationship and the frequency of examination" by the

11  treating physician; the "nature and extent of the treatment relationship" between the patient and the

12  treating physician; and the relevant evidence, especially "medical signs and laboratory findings," that

13  the physician provides to support the opinion.  20 C.F.R. § 416.927(d)(2)(i)-(ii), (3).  Even when

14  contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating

15  physician's opinion is "still entitled to deference."  Social Security Ruling ("SSR") 96-2p; Orn, 2007

16  WL 2034287, *6.  "In many cases, a treating source's medical opinion will be entitled to the greatest

17  weight and should be adopted, even if it does not meet the test for controlling weight."  Orn, 2007 WL

18  2034287, *6 (citation omitted).

19      The medical records reveal that Dr. Gillespie, a staff physician with Family Healthcare Network,

20  Porterville Patient Encounters, personally treated, or supervised the physician's assistants' treatment of

21  Claimant from December 14, 2001 through April 29, 2005.  (AR 376-428, 440-515).  From 2003

22  through April 2005, Claimant did not keep approximately twenty scheduled appointments.  (AR 376,

23  381-382, 384, 396, 399, 402, 410-411, 442, 449, 459, 465, 482, 500-502, 511, 512).  The records

24  indicate that Dr. Gillespie's treatment consisted primarily of prescribing, or over-prescribing, medication

25  to alleviate Claimant's complaints of chronic back pain, and medicine to control Claimant's

26  hypertension, although Dr. Gillespie also performed some laboratory tests that resulted in the Hepatitis

27  C diagnosis and had Claimant undergo an abdominal ultrasound, which revealed a slight hepatgomegaly

28  with apparent fatty infiltration.  (AR 376-428, 440-515).  Dr. Gillespie repeatedly deferred examining

9

Claimant, although on two occasions physician's assistants examined his back.  (AR 467, 475).  Dr. Gillespie did refer Claimant to a neurosurgeon, a pain management clinic, a behavioral health (mental health) clinic, and gave him an order that would enable him to have an x-ray of his lumbar spine taken at a nearby hospital.  Except for an initial consultation with the behavioral health clinic, and possibly one individual therapy session, Claimant did not comply with any of Dr. Gillespie's referrals or orders.  (See AR 415, 467, 472-473).  Nor is there any indication that Dr. Gillespie reviewed any previous x-rays, MRIs, diagnostic tests, or physical therapy records[5] that Claimant reported that he had undergone, although Dr. Gillespie did mention attempting to obtain a 2002 MRI.  (AR 404-05, 409, 415, 421).

Dr. Gillespie completed an RFC Questionnaire on May 17, 2005.  (AR 435-39).  Dr. Gillespie diagnosed Claimant as suffering from degenerative disc disease of the lumbar spine and sciatica, with symptoms including chronic back pain that radiated to his legs. (AR 435).  He explained that the clinical findings and objective signs indicated that Claimant suffered pain with movement, and the drowsiness from the pain medication would affect Claimant's ability to work.  (AR 436).  Dr. Gillespie added that Claimant's emotional problems contributed to his symptoms and limitations, that his physical and emotional impairments were consistent with his symptoms and limitations, and that he often could maintain concentration and attention for only fifteen minutes.  (Id.).  With respect to his RFC and non-exertional limitations, Dr. Gillespie opined that Claimant could walk one block; sit for twenty minutes; sit, stand, and walk for less than two hours in an eight-hour day; had to have the opportunity to walk every half-hour for five minutes, shift positions at will, and take unscheduled ten-minute breaks at least five times daily.  (AR 437-438).  Dr. Gillespie further reported that Claimant could rarely lift up to ten pounds and never anything heavier; occasionally look down; occasionally hold his head in a static position; frequently turn his head to the right and left and look up; rarely twist or climb stairs; and never stoop, bend, crouch, or climb ladders.  (AR 438).  According to Dr. Gillespie, Claimant likely would miss four days of work per month because of his impairments.  (AR 439).

The ALJ addressed in detail the medical records, diagnostic tests, clinical findings, and limitations or impressions presented by numerous non-treating physicians.  (AR 18-21).  He noted that the records

---

[5]  The administrative record is devoid of any indication that Claimant had physical or rehabilitative therapy, although it had been recommended.  (AR 324-336, 351).

1   revealed that Claimant's test results showed little, if any, changes from those in the objective tests he

2   underwent before the first ALJ hearing. (AR 20-21). The ALJ then described Dr. Gillespie's treatment

3   of Claimant as primarily prescribing pain medication based on Claimant's subjective complaints of

4   chronic pain, performing laboratory and liver function tests and an abdominal ultrasound, and treating

5   him for hypertension. (AR 19-21). The ALJ declined to accord controlling weight to Dr. Gillespie's

6   opinion, given the doctor's treatment of Claimant, reliance on Claimant's subjective complaints, and

7   inconsistencies with the objective medical evidence. (AR 19). The ALJ, instead, gave great deference

8   to Dr. Tran, because this consulting examiner's assessment was based upon objective evidence.

9   (AR 21).

10        The ALJ set forth the substantial medical evidence, which consisted primarily of examining

11   physicians' evaluations and clinical findings, but also including the lack of more aggressive treatment

12   modalities by Dr. Gillespie, to reject his opinion. 20 C.F.R. § 416.927(d)(2); SSR 96-2p (it is for the

13   adjudicator to decide whether the opinion is adequately supported by "medically acceptable clinical and

14   laboratory diagnostic techniques."); Orn, 2007 WL 2034287, *5. The same reasons that support the

15   ALJ's refusal to give controlling weight to Dr. Gillespie's opinion also explain the minimal weight and

16   deference the ALJ accorded the opinion under the prescribed factors. Orn, 2007 WL 2034287, *6;

17   20 C.F.R. § 416.927(d)(2)-(6). For example, although Dr. Gillespie had treated Claimant for a long

18   time, the ALJ noted that he lacked objective medical evidence regarding Claimant's spinal impairment

19   and treated him with pain pills, which decreases the weight that Dr. Gillespie deserves. 20 C.F.R.

20   § 416.927(d)(ii). In addition, the impairments and limitations that Dr. Gillespie imposed on Claimant

21   are so inconsistent with the other evaluations as to call Dr. Gillespie's opinion into doubt. 20 C.F.R.

22   § 416.927(d)(4).

23        Because ALJ Ross outlined Claimant's medical history and provided adequate reasons, based on

24   substantial evidence, for not accepting, or deferring to, Dr. Gillespie's opinion, the undersigned finds

25   that there was no error.

26   **(B)   Rejection of Consulting Examiner's Report Without Adequate Explanation**

27        Claimant further contends that the ALJ accepted in part and rejected in part the evaluation by

28   consulting examiner Dr. Tran without explaining his reasons for rejecting some of the limitations in the

11

evaluation, in violation of SSR 96-5p, 96-8p, and various regulations.  (Doc. 19, pp. 12-13).  Claimant asserts that, had the ALJ actually "given greater weight to" Dr. Tran's assessment that Claimant could not engage in prolonged standing or walk for more than four hours, the ALJ would not have found that Claimant could perform light work.  (Id.).

Dr. Tran examined Claimant on July 21, 2001, and prepared a "comprehensive orthopedic evaluation."  (AR 336).  Dr. Tran reviewed the orthopedic records and the results of diagnostic tests, which revealed that Claimant had a herniated disc at L3-L4.  Dr. Tran noted that Claimant had obtained relief from epidural injections, but no nerve conduction studies had been conducted.  (Id.).  Dr. Tran's observations indicated that Claimant was moderately obese and not in acute distress.  (Id.).  Dr. Tran found that Claimant was able to put on and take off his shoes and socks, but at a slow pace.  (AR 336-337).  Upon examination, Dr. Tran stated that Claimant had a normal gait, used no assistive devices, and his back was "tender to palpitation at L3-L5."  (AR 337-338).  Dr. Tran's impression was that Claimant suffered chronic back pain, probably discogenic (degenerative discs), possibly with lumbosacral radiculopathy.  Dr. Tran added that the back pain decreased Claimant's range of motion and hip flexor strength.  (AR 338).  Dr. Tran opined that Claimant could lift twenty pounds occasionally, ten pounds frequently, should avoid activities that required frequent bending, stooping, kneeling, "or prolonged standing or walking more than four hours."  (Id.).  Dr. Tran added that Claimant was not restricted as to sitting, climbing, balancing, fingering, grasping, overhead activities, reaching, and had no visual or environmental limitations.  (Id.).

As argued by Claimant, the problem arises with respect to Dr. Tran's statement that he should avoid "prolonged standing or walking more than four hours."  (Doc. 19, pp. 12-13; AR 338).  Admittedly, this fragment of Dr. Tran's lengthy statement could be read as limiting Claimant from standing for more than four hours and walking for more than four hours; alternatively it could be construed as restricting Claimant from prolonged standing, which phrase is subject to interpretation, and walking for more than four hours.

To be capable of performing light work, an individual must be able to spend a combined total of six hours standing and/or walking in an eight-hour day.  SSR 83-10.  Because the ALJ found Claimant able to engage in jobs designated as light work, the ALJ must have construed Dr. Tran's above-

1   referenced statement as enabling Claimant to spend four hours standing and four hours walking.

2   (AR 22-24, 338).  This Court must defer to the ALJ's resolution of the evidence when it is susceptible

3   to more than one rational interpretation.  See Magallanes v. Bowen, 881 F.2d at 750 (holding that it is

4   the ALJ's responsibility to resolve conflicting medical evidence and the court must defer to the ALJ's

5   interpretation when said evidence could be construed logically as stating different things).  Accordingly,

6   because Dr. Tran's statement concerning Claimant's ability to walk and stand is subject to alternative

7   interpretations, the ALJ, in construing it as enabling Claimant to perform light work, did not reject Dr.

8   Tran's opinion and, therefore, did not have to provide any reasons for discounting the evaluation in part.

9   **(C)   ALJ'S Failure to Find Claimant's Testimony Credible**

10        Claimant alleges that the ALJ improperly applied SSR 96-7p and the applicable regulations when

11   he discounted Claimant's subjective pain testimony.  (Doc. 19, pp. 10-11).  According to Claimant, his

12   persistent effort to obtain relief from his chronic pain, the various treatments he has tried, including the

13   medication he presently takes, and his inability to engage in many daily activities demonstrate that he

14   suffers severe pain that is debilitating.  (Id. at 11-12).

15        A two step analysis applies at the administrative level when considering a claimant's subjective

16   credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce

17   objective medical evidence of an impairment and show that the impairment could reasonably be

18   expected to produce some degree of symptom.  Id. at 1281-82.  Pursuant to SSR 96-7p, however, the

19   ALJ may not disregard the claimant's pain testimony only because there is a lack of medical records

20   evidencing an impairment that causes pain.  SSR 96-7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792

21   (9th Cir. 1997).  Nonetheless, if there is no evidence that the claimant is malingering, the ALJ can reject

22   the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and

23   convincing reasons for doing so."  Smolen, 80 F.3d at 1281.  This level of specificity is crucial because,

24   in its absence, effective judicial review may not be possible.  See Mersman v. Halter, 161 F. Supp. 2d

25   1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's

26   testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion

27   is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to

28   make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

13

1  individual's statements and reasons for that weight").

2      The Ninth Circuit has long held that, when a claimant testifies about disabling pain, but does not

3  seek treatment for it or comply with prescribed treatment, the ALJ may find that the claimant's pain

4  testimony is "unjustified or exaggerated." <u>Orn</u>, 2007 WL 2034287, *11.  This Court further notes that

5  there are any number of clear and specific findings that the ALJ can make, many of which are identified

6  in SSR 96-7p.  Such findings include: (1) whether "the level or frequency of treatment is inconsistent

7  with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether "the medical reports

8  or records show that the individual is not following the treatment as prescribed and there are no good

9  reasons for this failure," <u>id.</u>, (3) the consistency of statements made by the claimant to physicians, to

10 those deciding benefits under other programs (<u>e.g.</u>, workers' compensation), and to the Social Security

11 Administration itself, while recognizing that "[s]ymptoms may vary in their intensity, persistence, and

12 functional effects, or may worsen or improve with time, and [that] this may explain why the individual

13 does not always allege the same intensity, persistence, or functional effects of his or her symptoms." <u>Id</u>.

14 Each of these and other potential findings are fact-specific, precisely the province of the ALJ.  Some

15 other ALJ findings, as identified in reported cases, are illustrative and demonstrate the many ways in

16 which ALJs can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's

17 testimony that her neck pain was so severe that she had to cut her long hair for relief was contradicted

18 by the fact that her hair reached well below her shoulders at the administrative hearing, <u>Connett v.</u>

19 <u>Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ found that claimant's testimony that she

20 had never undergone physical therapy was contradicted by medical records indicating that she had, in

21 fact, attempted such treatments, <u>id.</u>, (3) an ALJ found that claimant's "'extremely poor work history'"

22 and low "'propensity to work'" negatively affected her credibility regarding her assertion that her

23 disability precluded work,  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002), (4) the same ALJ

24 found that claimant had not been a reliable historian, "'presenting conflicting information about her drug

25 and alcohol usage,'" <u>id.</u>, (5) the same ALJ also found that claimant's efforts to impede accurate testing

26 of her limitations argued strongly against her credibility, (6) an ALJ found that claimant had been

27 uncooperative during consultative examinations, and illustrated that finding with a specific statement

28 by a physician regarding claimant's "'poor effort,'"  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir.

2001), (7) the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific comment by a physician that claimant was deficient during cognitive testing but "'much better'" when giving reasons for her inability to work, id., (8) an ALJ found that claimant's pain assertions were inconsistent with the opinion of his own treating physician, who was "'quite emphatic in his report about the lack of objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that claimant's limited and recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998) and (10) the same ALJ found that claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049.  For a brief synopsis of factors that can form a basis for ALJ credibility findings, see Light, 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains").

Moreover, SSR 02-01p, which is the Administration's most recent evaluation of obesity, discusses the diagnosis of obesity on the five-step sequential process and the potential that obesity may cause or affect other ailments, such as sleep apnea.  This ruling, however, is equivocal with respect to the effect of obesity on an individual's ability to function, noting that it may lead to other ailments and, accordingly, additional analysis is warranted in determining the RFC of an obese person.  SSR 02-01p. This ruling does not specifically address any painful or limiting effects of obesity, or the credibility of testimony related to same.  SSR 02-01p.  In the instant case, however, the ALJ determined that, because Claimant's weight had remained fairly constant over the years, and given the lack of medical evidence to the contrary, Claimant's obesity has no adverse effect on Claimant's functionality.  (AR 21).

ALJ Ross discounted Claimant's pain testimony because it was inconsistent both with the objective medical evidence and the activities Claimant reported he was able to perform.  (AR 20).  The ALJ further noted that Claimant has not attempted to control his pain using methods other than prescription medications; for example, he had not tried acupuncture or biofeedback or a TENS unit, which implicitly

1   belies Claimant's argument that he persistently sought relief from his pain.[6]   (AR 20).   Moreover,

2   Claimant testified that he could engage in more activities than his treating physician opined, suggesting

3   that Claimant's subjective complaints were exaggerated.   (AR 20-21).   Finally, in detailing the medical

4   records, the ALJ noted that some physicians opined that Claimant was not putting forth full effort while

5   they were examining him, which detracts from Claimant's credibility.   (AR 19).

6        The ALJ set forth sufficient, adequate reasons for discounting Claimant's subjective testimony,

7   as discussed above.   See Tonapetyan, 242 F.3d at 1148 (put forth insufficient effort); Ruiz, 24 F. Supp.

8   2d at 1049 (conservative treatment regimen).   The undersigned, therefore, finds no error in the ALJ's

9   discounting, in part, the credibility of Claimant's testimony.

10   **(D)   Failure to Elicit Testimony from a Vocational Expert**

11        Because the ALJ determined that Claimant was limited in his ability to stoop and crawl, Claimant

12   contends that it was imperative that a vocational expert ("VE") testify as to what jobs Claimant would

13   be able to perform in light of these restrictions.   (Doc. 19, p. 14).   Claimant emphasized that the inability

14   to stoop could affect the ability of an individual to perform a full range of sedentary work, which would

15   result in a finding of disability.   (Id. at 14-15).   Therefore, Claimant contends the ALJ erred in failing

16   to elicit testimony from a VE.   (Id.).

17        After a claimant has established a prima facie case of disability by demonstrating he cannot return

18   to his former employment, the burden shifts to the ALJ to identify specific jobs existing in substantial

19   numbers in the national economy that claimant can perform despite his identified limitations.   Hoffman

20   v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).   The ALJ can satisfy this burden by either (1) applying

21   the grids or (2) taking the testimony of a vocational expert.   Burkhart v. Bowen, 856 F.2d 1335, 1340

22   (9th Cir. 1988).

23        The grids are an administrative tool the Commissioner may rely on when considering claimants

24   with substantially uniform levels of impairment.   Id. citing Desrosiers v. Secretary of Health and Human

25

26        [6]  Although not referenced by the ALJ, given that epidural injections previously had provided him relief, yet he
     had not asked his treating physician about the possibility of repeating them, Claimant's repeated failures to keep his
27   appointments, and his reported abuse of his pain medications, further support a finding that Claimant was not in as much
     pain as he claimed, and was seeking something other than pain relief.   (See generally AR 376-428, 440-515).   Further, at
28   least two consultants opined that Claimant was malingering to some extent.   (See AR 154, 358-359).

16

1   Serv., 846 F.2d at 578.  However, the use of the grids is not always proper.  If a claimant has non-

2   exertional limitations[7] that significantly limit his range of work, the use of the grids in determining

3   disability is inappropriate.  Bates v. Sullivan, 894 F.2d 1059 (9th Cir. 1990), overruled on other grounds

4   Bunnell v. Sullivan, 947 F.2d 341, 342 (9th Cir. 1991).  In such instances, a vocational expert generally

5   must be called to identify jobs that match the abilities of the claimant, given his limitations.  See, e.g.,

6   Magallanes v. Bowen, 881 F.2d at 756.  Nevertheless, if an ALJ determines that a claimant's non-

7   exertional limitations do not significantly affect his ability to perform a full range of work, then use of

8   the grids is appropriate.  Tackett v. Apfel, 180 F.3d at 1101; see SSR 85-15 ("If a person can stoop

9   occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light

10  occupational base is virtual intact.").  In addition, if the claimant has only non-exertional limitations that

11  may affect his ability to perform the full range of a particular level of work, the requirement that a VE

12  testify depends on the specific Appendix 2 regulation.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec.

13  200.00(e).  The ALJ, however, may take administrative notice  that there a significant number of jobs

14  in the national economy that the Claimant could perform.  Id. at  Sec. 200.00(b).

15       The Court finds no error in the ALJ's RFC determination.  (AR 21, 23).  This includes the ALJ's

16  conclusion that Claimant's non-exertional limitations to occasional stooping or crouching do not prevent

17  him from performing virtually the entire range of light work.  (Id.).  As noted above, the finding with

18  respect to Claimant's non-exertional restrictions permits the ALJ to use the grids.  Tackett, 180 F.3d at

19  1101.  Using grid rule 202.00 as a framework, the ALJ determined that, based on Claimant's ability to

20  perform work at the light level, the fact that his non-exertional limitations did not significantly

21  compromise his ability to perform work at this level, and given his age and education,  Claimant could

22  perform a significant number of jobs available in the national economy and, accordingly, was not

23  disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.17; (AR 22-24).

24       Since the ALJ found that Claimant could perform the physical and mental demands of the jobs

25  administratively noticed under the grids, it was not necessary for him to call a vocational expert.  As

26  noted above, if non-exertional limitations "significantly" affect a claimant's ability to perform work, then

27

28       [7]Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an
    individual's physical strength."  Soc. Sec. Rul. 96-8.  See also 20 C.F.R. Pt. 416.969a; Desrosiers, 846 F.2d at 579.

vocational expert testimony is required. <u>Bates</u>, 894 F.2d at 1059. However, because the ALJ in this case appropriately determined that Claimant's non-exertional limitations did not "significantly compromise" his ability to perform work, the use of the grids by the ALJ was entirely appropriate. Therefore, the undersigned concludes that the ALJ did not err by failing to elicit testimony from a vocational expert. The ALJ's use of the grids as a framework to find Claimant not disabled was proper in this case.

## CONCLUSION

For the reasons discussed above, this Court finds no error in the ALJ's analysis, which was based on proper legal standards. Accordingly, this Court ORDERS:

1.     That Claimant's Social Security complaint is DENIED; and

2.     That judgment be ENTERED for Defendant Michael J. Astrue and against Claimant Christopher Lopez.

IT IS SO ORDERED.

Dated:   **August 30, 2007**                                      _____**/s/ Theresa A. Goldner**_____
_____                                                             UNITED STATES MAGISTRATE JUDGE